W. D. DODDS, Trustee, Appellee, v. JOHN W. CARTWRIGHT et al., Appellants.

No. 39555.

OCTOBER 15, 1929.

REHEARING DENIED FEBRUARY 14, 1930.

*J. C. Pryor* and *Hirsch & Riepe,* for appellants.

*Seerley & Clark,* for W. D. Dodds, Trustee, appellee.

*La Monte Cowles, Glen F. Cray,* and *Carl M. Fischer,* for Almina S. Cartwright et al., appellees.

DE GRAFF, J.—Under the will of Stephen Cartwright, John W. Cartwright, his son, was given a one-half interest in fee simple in the residue of the estate, which consisted of a farm in Des Moines County, Iowa. The other one-half share of the residue was devised to John W. Cartwright, in trust for his sister, Maude Alice Egan.

This suit grows out of the conduct of John W. Cartwright in administering this trust. There is but little dispute on the facts between the parties as to what actually happened, but each party seeks to draw a different conclusion from the facts. The primary dispute of fact is whether or not the beneficiary, Maude Alice Egan, had knowledge of and acquiesced in the sale of the property made by her trustee, John W. Cartwright, to William Parsons. We will dispose of that dispute in the recital of the history of the case.

The will of Stephen Cartwright was admitted to probate June 2, 1919. His widow accepted under the terms of the will. John W. Cartwright was named executor, and filed inventory on June 11, 1919. The only beneficiaries were John W. Cartwright and his sister, Maude Alice Egan. The real estate in Des Moines County comprised 123.71 acres. There was no personal property, and apparently no debts. The Farmers' & Merchants' Savings Bank of Burlington became interested in the land by taking a mortgage on this and other property on March 18, 1923, and at the suggestion of an officer of this bank, John W. Cartwright arranged for a fraudulent and fictitious sale of the farm, one half of which farm he held in trust. In January, 1920, John W. Cartwright caused notice to be published, advertising the farm for sale on August 3, 1920. One of the officers of the bank arranged with a relative of his, a stranger in the community, one William Parsons, of Fairfield, Iowa, to be present and bid in the property at the sale. This was apparently done for the purpose of vesting title in John W. Cartwright, and this fact does not seem to be disputed by the other

parties to the suit. However this may be, the sale was had, and Parsons was there, and actually bid; and from the testimony it is obvious that, whatever the plan was, its main purpose was to conceal from the neighbors and other people in the community the fact that it was anything but an honest sale. Both Mr. Parsons and Mr. Toothacre, who procured Parsons to be there, testified that Parsons made the bid so that it would look genuine. Mr. Parsons testified:

"After I left the farm, the day before the sale, I came to Burlington to the Farmers' & Merchants' Savings Bank, and saw Mr. Toothacre. That is when I talked to him about the details of the sale. I went to the place of sale on the morning of the sale, with Mr. Cartwright in his car. He got me up on the hill about where Toothacre used to live. I stayed with Mr. Toothacre. I suppose we discussed the matter of the sale with him before we went out to Cartwright's. I made arrangements with Mr. Cartwright as to how I would bid the property at the sale. The sale was an auction, and he gave me or told me a sign that he would make when he wanted me to quit bidding. At the sale, I bid until he gave me a sign to stop. I don't remember what price it was that I bid. When he gave me the sign to stop bidding, the property was struck down to me. Nobody bid any higher."

Even Mrs. Cartwright, according to her testimony, believed that Mr. Parsons actually bought the land, and her testimony would be sufficient for the court to find that the *cestui que trust,* Mrs. Egan, did not know that the sale was previously arranged. The testimony leads to the conclusion that the sale was so staged that everyone present believed that it was intended to be *bona fide* and that Parsons was a genuine bidder. The record does not justify a finding that Mrs. Egan was a party to or acquiesced in the arrangement for this sale. She knew that the sale was being made, but she believed that the bid was genuine.

Cartwright did not make any report of the sale to the court until June, 1923, at which time he obtained an order approving the sale made by him, both as executor and trustee, and directing the execution of a deed to William Parsons. Cartwright, however, as trustee, was required to file a bond in the sum of $17,500. In the following January, Cartwright filed

a bond signed by the Southern Surety Company, the appellant here. He made a deed from himself individually, as executor, and as trustee of this land, to William Parsons. The deed is dated February 6, 1924, and the record shows that it was filed for record the following May. The deed recited a consideration of $25,360.55, which is the amount bid at the sale. Parsons and wife immediately deeded the land back to Cartwright.

On April 25th, the court made an order approving the executor's final report, in which order the court found that the land held in trust had been sold, and after certain deductions,  the amount to be charged to Cartwright, as trustee for Mrs. Egan, was determined and adjudicated to be $9,195.20. This finding stands. On January 8, 1926, Cartwright, as trustee, filed a report in which he stated that there had come into his possession from the sale of the real estate the sum of $9,195.20. The trustee continued to file reports until July 2, 1926, at which time the court found him to be in default in the sum of $11,140, and removed him as trustee, and ordered him to pay that amount to his successor, the plaintiff-trustee in this case. The surety's liability is thus predicated. The finding and order mentioned heretofore is a verity. It determined the quantum of liability of the principal, and therefore of the surety.

After Cartwright had acquired the record title to the farm, he mortgaged it, and later traded it to defendant-appellee Magel, for a piece of town property, upon which property the other defendant-appellees have mortgages. Magel and the mortgagees must be viewed as subsequent purchasers for value.

We reach the following conclusions:

(1) There is no evidence to sustain a finding that Mrs. Egan acquiesced in or ratified the wrongful acts of the trustee. We do not consider that it was any concern of the Surety Com-  pany's whether the defrauded beneficiary affirmed the sale and sought to recover the purchase price, or disaffirmed. As between principal and surety, the beneficiary had the right to do what she did do.

(2) The principal, Cartwright, named in the bond in question did not "faithfully discharge the duties imposed on him by law according to the best of his ability." He was not

only unfaithful, but was dishonest, and perpetrated a palpable fraud. The bond itself, in part, reads as follows:

"We jointly and severally (principal and surety) bind ourselves, our heirs and executors to the district court of Des Moines County in the penal sum of seventeen thousand five hundred dollars upon this condition: that if the undersigned, J. W. Cartwright, who has been appointed trustee in the estate of Stephen Cartwright, deceased, shall faithfully discharge the duties imposed on him by law, according to the best of his ability, then his bond is to be void, otherwise in full force."

(3) This is an action in equity, and the trial judge did correctly overrule the demand of the surety to reopen the settlement of the trustee's account and set aside the orders of the court previously made. It is quite obvious that the only object the surety had in asking that the matter be reopened, was to avoid the conclusiveness of the order upon the principal, and thereby upon the surety. The surety does not dispute the amount of the principal's default. Under the terms of the bond, it is apparent that a reopening of the matter would be immaterial in this case. There was a breach of the trust, and it is perfectly apparent that the principal has defaulted as trustee of the land, and after that, he was the trustee of the proceeds of it. There is no complaint relative to the amount of the liability fixed for the one half of the purchase price of the land. The only question is whether the surety is liable at all. We answer, under the record, that the surety is liable.

There is little occasion to discuss other matters presented in argument. The decree entered is—*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.